# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL MEEK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-18-407-STE |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.    PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 11-23). The Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his application date of May 5, 2014, his alleged onset date. (TR. 13). At step two, the ALJ determined that Mr. Meek had the severe impairments of chronic obstructive pulmonary disease (COPD) and diabetes mellitus. (TR. 13). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 14).

At step four, the ALJ concluded that Mr. Meek was unable to perform any past relevant work. (TR. 21). Even so, the ALJ concluded that Mr. Meek had retained the residual functional capacity (RFC) to:

> [P]erform work at all exertional levels as defined in 20 CFR 404.1567(c) and 416.967(c) except he must avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, and gases.

(TR. 14). At the administrative hearing, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 43). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT) that Mr. Meek could perform.

(TR. 44-45). At step five, the ALJ adopted the testimony of the VE and concluded that Mr. Meek was not disabled based on his ability to perform the identified jobs. (TR. 22).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ committed legal error in his evaluation of opinions from Jo Ann Carpenter, D.O.

## V. DR. CARPENTER'S OPINION

The medical record contains treatment notes pertaining to Mr. Meek from the Compassion Outreach Center dating September 9, 2014 through November 8, 2016. (TR. 343-346, 364, 397-404, 410-411). Of those records, Dr. Carpenter authored one—dated August 11, 2015—where she noted that she "filled out disability papers." (TR. 364). Presumably, the "disability papers" to which Dr. Carpenter referred was a 2-page

3

"Physical Assessment" dated August 11, 2015, which reflects the treatment notes of the same date and provides specific work-related limitations.[1] (TR. 361-362, 364). Plaintiff alleges that the ALJ committed several errors in the evaluation of Dr. Carpenter's opinions as set forth in the Physical Assessment. (ECF No. 14:5-14). The Court disagrees.

### A. The ALJ's Duties in Evaluating Medical Opinions

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. §§ 404.1527(c) & 416.927(c). The weight given each opinion will vary according to the relationship between the claimant and medical professional. *Hamlin*, 365 F.3d at 1215. For example, in evaluating a treating physician's opinion, the ALJ must follow a two-pronged analysis. First, the ALJ must determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

This analysis, in turn, consists of two phases. First, an ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at 2 (July 2, 1996) (SSR 96-2p) (internal quotations omitted). If controlling weight is declined, the ALJ must assess the opinion under a series of factors which are considered when assessing *any* medical opinion, regardless of its

---

[1] It appears as though Dr. Carpenter dated her "Physical Assessment" on August 11, 2012. (TR. 361). But the ALJ recognizes that the opinion was authored on August 11, 2015 and the Court agrees. (TR. 18).

source. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R §§ 404.1527(c), 416.927(c).

Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

Additionally, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.,* 13 F.3d 359, 360–61 (10th Cir. 1993). An ALJ's duty to recontact Plaintiff's physicians or otherwise seek additional medical evidence may be triggered if the medical evidence is insufficient to determine disability. 20 C.F.R. § 404.1520b(c); *Giuliano v. Colvin*, 577 F. App'x 859, 862, n.3 (10th Cir. 2014) ("[T]he duty

to recontact a doctor is triggered when the evidence is insufficient to make a proper disability determination.") (citing *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001)).

### B. Dr. Carpenter's Opinions and the ALJ's Related Findings

As stated, on August 11, 2015, Dr. Carpenter completed a Physical Assessment regarding Mr. Meek's physical abilities and limitations. (TR. 361-362). In the assessment, Dr. Carpenter diagnosed Mr. Meek with chronic obstructive pulmonary disorder (COPD) and type 2 diabetes. (TR. 361). Dr. Carpenter noted that Plaintiff's symptoms associated with these impairments were "frequently" severe enough to interfere with the attention and concentration required to perform simple work-related tasks. (TR. 361). Regarding specific, work-related impairments, Dr. Carpenter opined that Plaintiff could:

- Occasionally lift or carry up to 50 pounds;
- Sit, stand, or walk for 1 hour total, during an 8-hour workday;
- Walk for 5 city blocks without rest or significant pain;
- Perform repetitive reaching, handling or fingering;
- Reach with his arms for 10% of an 8-hour workday;
- Grasp, turn, and twist objects with his hands for 10% of an 8-hour workday; and
- Engage in fine manipulation with his fingers for 10% of an 8-hour workday.

(TR. 361). Dr. Carpenter also noted that Mr. Meek's impairments would: (1) require him to rest 2-3 hours after one hour of work and (2) likely cause him to be absent from work 3-4 times per month. (TR. 361-362).

In the administrative decision, the ALJ recited Dr. Carpenter's opinions, practically verbatim,[2] then completely rejected the opinions by stating:

> The Administrative Law Judge rejects this opined [sic] as it is based upon claimant's subjective complaints. The doctor's opinion is conclusory with little explanation on the ultimate issue of disability, which is reserved to the Commissioner. This opinion is not supported by doctor's own objective clinical or laboratory findings. Dr. Carpenter's opinion is not consistent with the medical records. Such opinion is inconsistent with the reported activities and abilities of the claimant.

(TR. 20).

### C. Plaintiff's Allegations of Error and Court's Analysis

Mr. Meek argues the ALJ: (1) failed to analyze Dr. Carpenter's opinions utilizing the proper legal framework; (2) improperly rejected Dr. Carpenter's opinions based on findings at step two; (3) erred in relying on opinions from two State Agency physicians over Dr. Carpenter's opinion; and (4) erred in failing to recontact Dr. Carpenter for clarification of her opinion. (ECF No. 14:7-13). The Court rejects each allegation of error.

#### 1. No Error in Failing to Analyze Dr. Carpenter's Opinion Utilizing the Proper Legal Framework

Plaintiff alleges that the ALJ erred at both steps of the "two-step" rubric for analyzing a "treating physician's" opinion. (ECF No. 14:7-8, 11-13). The Court disagrees. As stated, in evaluating a treating physician's opinion, the ALJ must first determine, then explain, whether the opinion is entitled to controlling weight. *Langley*, 373 F.3d at 1119. Plaintiff's argument, however, is premised on a threshold finding that Dr. Carpenter was

---

[2] (TR. 18).

Plaintiff's "treating physician." If Dr. Carpenter was not Plaintiff's "treating physician," the Court need not determine whether the ALJ had failed to accord the presumption of controlling weight to her opinions. *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

A treating physician's opinion is given particular weight because of her "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). Such a relationship requires both duration and frequency. "The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Doyal*, 331 F.3d at 762 (citation omitted). "[T]he assumption that the opinions of a treating physician warrant greater credit that the opinions of [other experts] may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration." *Id.* (citation omitted).

The record contains approximately two years of treatment notes from the clinic where Dr. Carpenter practiced. *See* TR. 343-346, 364, 397-404, 410-411. But of those treatment notes, Dr. Carpenter authored only one—dated August 11, 2015. (TR. 364). Dr. Carpenter's opinions as set forth in the "Physical Assessment" are also dated August

8

11, 2015, but outside of this date, the record contains no evidence establishing a treatment relationship between Dr. Carpenter and Mr. Meek. The Court therefore concludes that Dr. Carpenter was not Plaintiff's "treating physician" and the ALJ was not, therefore, required to determine whether Dr. Carpenter's opinions were entitled to controlling weight. Even so, the ALJ was still required to assess the opinions under a series of factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R §§ 404.1527 (c) & 416.927(c). Plaintiff argues that the ALJ erred in this evaluation, but the Court disagrees.

The ALJ rejected Dr. Carpenter's opinions because they were:
- based upon claimant's subjective complaints;
- not supported by the doctor's own objective clinical or laboratory findings;
- inconsistent with the medical records; and
- inconsistent with the reported activities and abilities of the claimant.

(TR. 20). Citing *Langley v. Barnhart*, Plaintiff argues that the ALJ's first rationale was improper, stating: "The Tenth Circuit has rejected such an assumption that the treating

source had provided an opinion 'as an act of courtesy' or because the provider was sympathetic to the claimant." (ECF No. 14:12). The Court agrees, but concludes that the error was harmless.

In *Langley*, the ALJ discounted a treating physician's opinion for multiple reasons, including: (1) because the opinion appeared to have been based on the plaintiff's subjective complaints and (2) because the ALJ believed the opinion to have been rendered as an "act of courtesy" to the plaintiff. *Langley*, 373 F.3d at 1120. Ultimately, the Court concluded that these rationales lacked substantial evidence based on the facts in that case and "[t]he ALJ [must have] a legal or evidentiary basis for his finding that [a treating physician's] opinions were based merely on Plaintiff's subjective complaints of pain." *Id.* at 1121. Here, Mr. Meek has improperly equated an "act of courtesy" with a rejection based on subjective complaints, as the two rationales were distinct in *Langley*. Even so, Plaintiff correctly argues that the ALJ erred in rejecting Dr. Carpenter's opinion because it had been based on Plaintiff's subjective complaints, because there was no evidence to support this conclusion. *See* TR. 361-361. Accordingly, the Court concludes that this rationale was not a legitimate basis on which to reject Dr. Carpenter's opinion. *See Langley*, *supra*; *see also Garcia v. Barnhart,* 188 F. App'x 760, 764 (10th Cir. 2006) ("This court has made it clear that when an ALJ rejects a medical opinion . . . based on his speculation that the doctor was unduly swayed by a patient's subjective complaints, the ALJ deviates from correct legal standards and his decision is not supported by substantial evidence"). Even so, the Court concludes that the error was harmless because

the ALJ's remaining rationales provide a legitimate basis on which to affirm the ALJ's rejection of Dr. Carpenter's opinion.

Mr. Meek does not specifically challenge the underlying evidentiary bases for the remaining rationales, but argues: (1) that the ALJ "only partially considered one factor, supportability" and (2) that the record failed to reflect a consideration of every factor. (ECF No. 14:11-12). The Court rejects these arguments. First, clearly, the ALJ considered more than "supportability," as evidenced by the ALJ's additional findings which found Dr. Carpenter's opinions to be:

- not supported by Dr. Carpenter's own objective clinical or laboratory findings;

- inconsistent with the medical records; and

- inconsistent with the reported activities and abilities of the claimant.

(TR. 20). Second, Plaintiff cites an unpublished case, *Anderson v. Astrue*, 319 F. App'x 712 (10th Cir. 2009) for the proposition that "the record must reflect that the ALJ *considered* every factor in the weight calculation." (ECF No. 14:12). But in *Krausner v. Astrue*, a published case which post-dates *Anderson* by two years, the Tenth Circuit states: "In applying these factors [under 20 C.F.R §§ 404.1527(c) & 416.927(c)], the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reason for that weight." *Id.* (quotation omitted). Here, the Court can confidently state that the ALJ followed the dictates of *Krausner*. The ALJ rejected Dr. Carpenter's opinions, because they were not supported by doctor's own objective clinical or laboratory findings and inconsistent with

the medical records and with the reported activities and abilities of the claimant. (TR. 20). Accordingly, the Court affirms the ALJ's treatment of Dr. Carpenter's opinion.

### 2. No Error in Rejecting Dr. Carpenter's Opinion Based on Step Two Findings

Mr. Meek argues that the ALJ improperly rejected Dr. Carpenter's opinions because the ALJ found that Mr. Meek suffered from severe impairments at step two. The Court rejects this argument. Plaintiff's suggestion that an RFC assessment must match his severe impairments "overstates the impact of the [ALJ's] summary step-two evaluation on the detailed RFC determination at step four." *Johnson v. Berryhill*, 679 F. App'x 682, 686 (10th Cir. 2017). The ALJ's finding that a medically determinable impairment satisfies the "*de minimis*" threshold at step two simply means that the sequential analysis proceeds to step three; it "is not determinative of the claimant's RFC" and "does not account for the ALJ's assessment, at step four, of a claimant's ability to work at given exertion level." *Id.* (citing *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) and *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007)). The critical "question is not whether the RFC recounts or lists the 'severe' impairments found at step two, but whether the RFC accounts for the work-related limitations that flow from those impairments." *Cavalier v. Colvin*, No. 13-CV-651-FHM, 2014 WL 7408430, at *2 (N.D. Okla. Dec. 30, 2014).

### 3. No Error in Evaluating Opinions From State Agency Physicians

On July 2, 2015, and October 21, 2015, Social Security physicians Dr. Luther Woodcock and Dr. Sam Neely examined Plaintiff's records at the "initial" and

12

"reconsideration" levels of adjudicating Mr. Meek's applications for benefits. (TR. 47-62, 65-88). In doing so, both physicians noted that Plaintiff suffered from environmental limitations and should "avoid concentrated exposure" to fumes, odors, dusts, gases, and poor ventilation and "should avoid areas with high levels of dust and fumes." (TR. 52, 60, 72-73, 84-85).

On reconsideration, Dr. Neely stated that he had examined Dr. Carpenter's August 11, 2015 "Physical Assessment," but that he had rejected Dr. Carpenter's opinions, stating: "The clmt's impairments are not reasonably consistent w/ the sx & functional limitations described in the MSS. Attempted to obtain MER from Dr. Carpenter, but no treating records found." (TR. 74, 86). Dr. Neely also noted that Dr. Carpenter's opinion appeared to have been dated August 11, 2012. (TR. 74, 86). The ALJ adopted the State Agency physicians' opinions, as reflected in the RFC. (TR. 14).

Plaintiff argues that "the ALJ erred by relying on the State agency consultants' RFC assessments over Dr. Carpenter's MSS." (ECF No. 14:10). In support, Mr. Meek offers two theories, but neither is convincing.

First, Plaintiff argues that Dr. Carpenter's opinions necessarily mandated greater weight than the State Agency physicians' opinions because Dr. Carpenter was Plaintiff's treating physician. (ECF No. 14:10-11). But as explained, *supra*, there is no evidence that Dr. Carpenter had established a treating relationship with Mr. Meek. *See supra*.

Second, Mr. Meek states that Dr. Neely "based his rejection of [Dr. Carpenter's] MSS on faulty grounds" because he: (1) incorrectly noted that Dr. Carpenter's assessment

13

had been dated August 11, 2012, not August 11, 2015 and (2) failed to realize that the record contained treating notes from the clinic where Dr. Carpenter was employed, which would support her opinion. (ECF No. 14:9-10). The Court rejects both theories.

First, although Dr. Neely seemed to base his rejection, in part, on a seemingly outdated assessment, he also concluded that Plaintiff's symptoms and functional limitations, as described by Dr. Carpenter, were not consistent with Mr. Meek's impairments, based on the physician's independent review of additional evidence. Second, Plaintiff asks the Court to re-weigh the evidence submitted by various physicians employed by the Compassion Outreach Center, to reach a conclusion different from that reached by Dr. Neely, but this the Court cannot do. *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (noting that the Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency.") (internal quotation marks omitted).

### 4. No Error in Failing to Recontact Dr. Carpenter

Finally, Plaintiff argues that the ALJ erred in failing to recontact Dr. Carpenter for clarification of her opinions. (ECF No. 14:14-15). The Court disagrees. The relevant provision regarding an ALJ's duty to recontact is 20 C.F.R. §§ 404.1250b & 416.920b. Under these regulations, the duty to re-contact is discretionary, rather than mandatory. *See* 20 C.F.R. §§ 404.1520b(c) & 416.920b(c) (if the evidence is insufficient to determine disability, an ALJ "*may* recontact [a] treating physician, psychologist, or other medical source.") (emphasis added). The SSA considers evidence "insufficient" when "it does not contain all the information we need to make our determination or decision." 20 C.F.R. §§

404.1520b & 416.920b. Here, the ALJ obviously deemed the evidence sufficient to render a decision. Because the ALJ was able to reach a conclusion regarding whether Plaintiff was disabled, and because the regulations are discretionary, rather than mandatory, the ALJ was under no duty to recontact Dr. Carpenter.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on January 10, 2019.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE